UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at GREENEVILLE

JIMMY L. WALDEN, Jr.,                    )
                                         )
    *Petitioner*,                        )
v.                                       )        Nos. 2:11-cv-199; 2:07-cr-54
                                         )        *Judge Greer*
UNITED STATES OF AMERICA,                )
                                         )
    *Respondent*.                        )

## MEMORANDUM OPINION

Petitioner Jimmy L. Walden, Jr., ("Petitioner" or "Walden") has filed a *pro se* motion to vacate, correct, or set aside his sentence, pursuant to 28 U.S.C. § 2255, a brief, and a supplemental motion, (Docs. 82, 82-1, and 88).[1] The United States has filed a response in opposition to the motions, (Docs. 85 and 91), and petitioner a reply to the first response, (Doc. 87). For the reasons which follow, the § 2255 motion to vacate will be **DENIED**.

## I. Standard of Review

Title 28 United States Code section 2255(a) provides that a federal prisoner may make a motion to vacate, set aside, or correct his judgment of conviction and sentence on the ground that the sentence was imposed in violation of the Constitution or laws of the United States, that the court lacked jurisdiction to impose the sentence, or that the sentence is in excess of the maximum authorized by law, or is otherwise subject to collateral attack. As a threshold standard, to obtain post-conviction relief under § 2255 a motion must allege: (1) an error of constitutional magnitude; (2) a sentence imposed outside the federal statutory limits; or (3) an error of fact or law so

---

[1] All citations to the record refer to Walden's criminal case file (Criminal Number 2:07-cr-54).

fundamental as to render the entire criminal proceeding invalid. *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003); *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003).

Petitioner bears the burden of demonstrating an error of constitutional magnitude which had a substantial and injurious effect or influence on the criminal proceedings, *Reed v. Farley*, 512 U.S. 339, 353 (1994); *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993), and he likewise bears the burden of articulating sufficient facts to state a viable claim for relief under 28 U.S.C. § 2255. A § 2255 motion may be dismissed if it only makes vague conclusory statements without substantiating allegations of specific facts and thereby fails to state a claim cognizable under § 2255. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972).

Under Rule 8 of the Rules Governing Section 2255 Proceedings in the United States District Courts, a court is to determine, after a review of the answer and the records of the case, whether an evidentiary hearing is required. If the motion to vacate, the answer, and the records of the case show conclusively that the petitioner is not entitled to relief under § 2255, there is no need for an evidentiary hearing. *Baker v. United States*, 781 F.2d 85, 92 (6th Cir. 1986). The Court **FINDS** no need for an evidentiary hearing in the instant case.

## II. Procedural Background

In an indictment filed on June 12, 2007, Walden was charged with five narcotics offenses, (Doc. 1). Count one alleged that, on August 31, 2006, Walden knowingly and intentionally distributed 50 grams or more of cocaine base; Count two charged that, on October 5, 2006, he knowingly and intentionally possessed with the intent distribute five grams of cocaine base; Counts three and four asserted that, on October 6, 2006, he knowingly and intentionally possessed with the intent to distribute cocaine base in respective quantities of fifty grams or more and of a detectible

2

amount of cocaine; and Count five charged that, on that same date, he knowingly and intentionally possessed with the intent distribute marijuana, (*id.*).

Though Walden entered into a plea agreement and filed it with the Court, he successfully sought to withdraw the agreement and proceeded to trial, (Docs. 31-33). At the close of a three-day trial, the jury found him guilty of Counts two-five and a mistrial was declared on Count one, (Docs. 47-49). Thereafter, Count one was dismissed upon motion of the government and Walden was sentenced, as a career offender, to a life term of imprisonment, (Docs. 59-60).

Petitioner filed a direct appeal and the judgment was affirmed. *United States v. Walden*, 625 F.3d 961 (6th Cir. 2010). He then filed the instant § 2255 motion on July 6, 2011, raising claims of ineffective assistance of counsel.

### III. Factual Background

The facts recited below are taken from the Sixth Circuit's opinion on Walden's direct appeal.

> Working with a confidential informant, agents from the Tennessee Bureau of Investigation together with members of the Morristown, Tennessee police department began investigating Walden's involvement in illegal narcotics sales. After observing and recording a controlled buy of three ounces of crack cocaine from Walden, law enforcement officers attempted to arrange another controlled buy. In preparation, agents began surveillance on Walden and observed him stop at a residence at 249 Wilmore Drive, White Pine, Tennessee on the way to complete the transaction. After Walden left the Wilmore Drive residence, a police officer initiated a traffic stop of the pickup truck he was driving because the window tint was too far down on the window. While Walden was attempting to produce his license and registration, the officer observed that Walden's billfold contained a plastic bag with a white substance in it. The subsequent search revealed drugs on Walden's person, as well as over $5,900 in cash.

> The agents then procured a warrant to search the Wilmore Drive residence, which tax records ha[d] revealed belonged to

3

Walden. They discovered the house to be completely empty with the exception of a mattress in one of the bedrooms, some food in the kitchen, and an older model Ford Maverick in the basement garage. Inside the trunk of the Maverick, agents discovered cocaine, crack, approximately two pounds of marijuana, small plastic bags and a heat sealer that is commonly used to package drugs, beakers that are frequently used to cook powder cocaine into crack cocaine, a postal scale, digital scale, and a safe with $21,000 in cash. All told, the trunk of the car contained 171.9 grams (approximately 6.5 ounces) of crack cocaine, 369.5 grams (approximately 12.5 ounces) of powder cocaine, and about two pounds of marijuana.

*Walden*, 625 F.3d at 963 (footnote omitted).

## III. <u>Discussion</u>

*A. Law on Ineffective Assistance of Counsel*

Claims of ineffective assistance arise from the guarantee in the Sixth Amendment, which provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a break down in the adversary process that renders the result unreliable.

*Id*. As with any other claim under § 2255, a movant bears the burden of proving by a preponderance of the evidence that his counsel was deficient. *See Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006); *Virgin Islands v. Nicholas*, 759 F.2d 1073, 1081 (3d Cir. 1985).

In considering the first prong of the test set forth in *Strickland*, the appropriate measure of

4

attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id*. at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). There is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689.

Second, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003) (quoting *Strickland,* 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 454-455 (quoting *Strickland*, 466 U.S. at 694). Counsel is constitutionally ineffective only if a performance below professional standards caused the defendant to lose what he "otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

## B. Analysis of Claims

As grounds for relief in his § 2255 motion, Walden asserts that trial counsel gave him ineffective assistance by failing to file various motions, including a motion to suppress, a motion to dismiss the indictment based on speedy trial violations, and a motion for a judgment of acquittal, as to Counts two through five. Likewise, petitioner asserts that he received ineffective assistance on appeal because counsel failed to assert that "Tracy Brown" was an informant; to argue, with respect to Count two, that there was "no proof of any lesser quantity;" and to raise an indictment issue under Federal Rule of Criminal Procedure 6. In the supplement to the § 2255 motion, petitioner contends he received ineffective assistance at sentencing, based on three purported attorney errors: (1) and (2) the failures to argue that Walden's Sixth Amendment right to a jury was violated when the jury did not determine whether the "cocaine base" involved

5

in Count Three of the indictment was "crack" cocaine or powder cocaine and whether Walden had the prior convictions alleged in the § 851 information, (Doc. 5), and (3) the failure to argue that his life sentence was greater than necessary to satisfy the factors in 18 U.C.C. § 3553(a). Because facts supporting particular claims are scattered throughout petitioner's submissions, the Court has grouped related claims together, regardless of the number assigned to the claim by petitioner.

1.  <u>Motion to Suppress (Pet., Grounds 1-3)</u>

As the first instance of ineffective assistance, Walden asserts that counsel failed to file a motion to suppress within the November 13, 2007, motion deadline established by the Court. On November 15, 2007, the attorney with the Federal Defender's officer who had been representing petitioner was allowed to withdraw, and Jerry W. Laughlin was appointed as counsel. Mr. Laughlin filed a motion to extend the motions deadline, and the Court granted the motion and enlarged the deadline to December 17th. On December 12th petitioner signed a plea agreement, which was entered on December 17th —the deadline for filing motions.

Thereafter, petitioner realized that he would still be subject to life imprisonment under the plea agreement, saw no benefit to pleading guilty rather than taking his chances at trial, filed a motion to withdraw the agreement, and, in that motion, requested to schedule a new deadline to file "appropriate motions which were not previously filed because of the entry by the parties into said plea agreement," (Doc. 32). The Court granted Walden's motion to withdraw his plea, but denied his request to extend the motions deadline, (Doc. 33). Undeterred, petitioner filed a motion to late-file a motion to suppress evidence seized during his warrantless arrest and during a next-day search of the Wilmore Drive residence, but again the Court denied the motion, (Docs. 41 and 42).

6

The suppression-motion issue was raised on appeal. The Sixth Circuit extensively explored the issue and, citing to Federal Rule of Criminal Procedure 12(e) (providing that a defense or objection which is not raised in a pretrial motion prior to the deadline is waived, absent a showing of "good cause"), found that petitioner had not established "good cause" to overcome the waiver and that this Court had not abused its discretion in denying the motion to late-file a motion to suppress. *Walden*, 625 F.3d at 964-65.

In reaching this conclusion, the circuit court reasoned that nothing prohibited counsel from filing a motion to suppress, that Walden had deliberately decided not to timely file a motion to suppress, that successfully withdrawing a guilty plea did not amount to good cause, that it did "not seem unreasonable to require defense counsel to simultaneously pursue a motion to suppress while engaging in plea negotiations," and that, while many demands are placed on defense counsel, it did not "appear unduly burdensome to prepare pretrial motions, such as a motion to suppress, even if counsel expects the client to plead guilty." *Id*. at 966. The Sixth Circuit declined to adjudicate Walden's ineffective assistance claims offered on appeal, but advised him that he could pursue his claim through a collateral proceeding under § 2255.

Against this factual backdrop, Walden claims that counsel rendered ineffective assistance for failure to move to suppress the traffic stop, evidence gathered during the traffic stop, and evidence procured through a later search of his Wilmore Drive residence.

   *a. Traffic Stop*

Petitioner maintains that the stop of his pickup truck was illegal because it was not supported by reasonable suspicion and because it was occasioned by instructions to the officer who made the traffic stop to try to find a reason to stop him.

7

It is axiomatic that a law enforcement officer may stop a vehicle upon reasonable and articulable suspicion that its occupants are involved in past or present unlawful activity. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *United States v. Roberts*, 986 F.2d 1026, 1030 (6th Cir.), *cert. denied*, 510 U.S. 900, 114 S.Ct. 271, 126 L.Ed.2d 222 (1993). Reasonable suspicion of an ongoing misdemeanor traffic offense is adequate justification for a traffic stop. *See United States v. Shank*, 543 F.3d 309, 313 (6th Cir. 2008) (Based upon a believed violation of Ohio's window tinting law, officers had a proper basis to initiate a traffic stop.); *United States v. Simpson*, 520 F.3d 531 (6th Cir. 2008).

Here, there was reasonable suspicion to justify the investigatory stop, which was provided by the state's window tinting law. *See* Tenn. Code Ann. § 55-9-107(a)(1); *Weaver v. Shadoan*, 340 F. 3d 398, 407- 08 (6th Cir. 2003) (An ordinary traffic stop was justified by reasonable suspicion of a violation of Tennessee's registration and window tinting laws.). That statute requires windows of vehicles operated on public roads in Tennessee to have a visible light transmittance of at least thirty-five percent, with certain exceptions not relevant here, and the windshield to have a light transmittance of at least seventy percent. Where an officer has a reasonable belief that the statute is being violated, he is authorized to detain the vehicle for purpose of conducting a field comparison test. *See* Tenn. Code Ann. § 55-9-107(c).

As noted in the above factual synopsis, Walden was stopped by a police officer because the window tint on the pickup truck he was driving was "too far down on the window." The White Pine police officer who initiated the traffic stop so testified at the trial, (Doc. 63, Testimony of Arlie Ball at 121). Petitioner does not allege that the tint on his truck window did not violate the state statute. Furthermore, contrary to petitioner's argument, whether he was issued a citation for the window-tint violation is immaterial, so long as reasonable suspicion

8

supported the stop. *See United States v. Simpson*, 520 F.3d 531, 543 (6th Cir. 2008) (A stop supported by reasonable suspicion "is surely permissible even if the officer, after executing the stop, ha[s]d concluded that there was no violation of law.").

And while Officer Ball and former White Pine patrol officer Brian Osborne both testified that they were instructed "to try to find some reason" to stop the maroon pickup truck petitioner was driving, (*Id*., Testimony of Brian Osborne at 126), a traffic stop, even if pretextual, is admissible under the Fourth Amendment as long as there is independent reasonable suspicion to believe that a traffic offense is being committed. *United States v. Bailey*, 302 F.3d 652, 656-657 (6th Cir. 2002) ("It is well established, however, that an officer's actual motivation for making a traffic stop is irrelevant to the constitutionality of that stop.") (citing, *inter alia*, *Whren v. United States*, 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), and *United States v. Hill,* 195 F.3d 258, 264 (6th Cir.1999), *cert. denied*, 528 U.S. 1176, 120 S.Ct. 1207, 145 L.Ed.2d 1110 (2000)).

Failure to file a motion to suppress may be ineffective assistance of counsel. *Kimmelman v. Morrison*, 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986). However, "whether trial counsel ... acted incompetently in not filing a timely motion to suppress depends upon the merits of the search and seizure question," and where such a motion would not have succeeded, counsel did not render a prejudicial performance in failing to seek suppression. *Worthington v. United States*, 726 F.2d 1089, 1093 94 (6th Cir. 1984) (Contie, J., concurring). Because there was reasonable suspicion supporting the traffic stop, counsel did not give ineffective assistance for failing to challenge the traffic stop as unconstitutional.

> b. Evidence from the Traffic Stop

In this claim, petitioner is challenging the admission of both a plastic baggie of cocaine,

9

which he pulled from his pocket when he reached in his rear pocket to retrieve his driver license, and a second plastic baggie of cocaine, which was found on his person during a pat-down search conducted after he was ordered to exit his vehicle. Cash in the sum of $5,900 was also discovered during the pat-down search.

Warrantless searches "are per se unreasonable under the fourth amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). One such exception is the "plain view" doctrine, which "reflect[s] the rule that if, while lawfully engaged in an activity in a particular place, police officers perceive a suspicious object, they may seize it immediately." *Texas v. Brown*, 460 U.S. 730, 739, 103 S.Ct. 1535, 1542 (1983). Here, the officers were engaged in a lawful traffic stop and, thus, the seizure of the baggy containing a white substance, which petitioner extracted from his pocket while removing his wallet and which the officers suspected to be narcotics lies within the scope of the "plain view" exception to the warrant requirement. *See United States v. Franklin*, 1990 WL 124207, *4 (6th Cir. Aug. 27, 1990) (finding that the seizure of a rock of crack which fell from defendant's pocket was admissible under the "plain view" doctrine) (citing to *Texas v. Brown*).

Likewise, the seizure of the plastic baggie containing a white substance which was found during the pat-down search of petitioner also falls within an exception to the warrant requirement. The Fourth Amendment permits an officer to make an arrest without a warrant "if probable cause exists for the arresting officer's belief that a suspect has violated or is violating the law." *Michigan v. DeFillippo*, 443 U.S. 31, 36, 99 S.Ct. 2627, 2631, 61 L.Ed.2d 343 (1979). Probable cause requires "only the probability" of criminal activity, not a "'prima facie' showing." *Illinois v. Gates*, 462 U.S. 213, 235, 103 S.Ct. 2317, 2330, 76 L.Ed.2d 527 (1983)

10

(quoting *Spinelli v. United States*, 393 U.S. 410, 419, 89 S. Ct. 584, 590 (1969)).  The officers' observation of the first baggie, which they suspected to contain narcotics—possession of which violated Tennessee's drug laws, *see* Tenn. Code Ann. § 39-17-401 *et seq*.,—supplied probable cause to arrest Walden.

A search which is incident to a lawful arrest is an exception to the warrant requirement. *United States v. Deitz*, 577 F.3d 672, 687 (6th Cir. 2009) (citing *United States v. Robinson*, 414 U.S. 218, 235, 94 S.Ct.467, 38 L. Ed. 2d 427 (1973)).  Thus, an arresting officer may search the person arrested to seize evidence to avoid its concealment or destruction.  *Id.* (citing *Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034, 38 L.Ed.2d 685 (1969), *overruled on other grounds by Arizona v. Gant*, 556 U.S. 332, 129 S.Ct.1710, 1713, 173 L.Ed.2d 485 (2009)). Therefore, as respondent suggests, once the officers had probable cause to arrest petitioner (and probable cause existed upon their observance of the first plastic baggie containing suspected narcotics), the pat-down search of petitioner and the seizure of the second baggie, along with the cash, was perfectly legal.  Moreover, a formal custodial arrest need not precede the search as long as a formal arrest follows "quickly on the heels of the challenged search and the fruits of that search are not necessary to sustain probable cause to arrest." *Deitz*, 577 F.3d at 687 (citations and internal quotation marks omitted).

Because a motion to suppress evidence gathered during the traffic stop would not have been granted, counsel's failure to file this motion did not constitute ineffective assistance.

### c. Evidence from the Residence

Petitioner contends that the search warrant for the residence at 249 Wilmore Drive, in White Pine, Tennessee, was lacking in probable cause or specificity, and thus, that evidence derived from the search was inadmissible and should have been the subject of a motion to

suppress by counsel. As the Sixth Circuit noted, a vehicle in the basement garage of the residence contained a cache of narcotics (i.e., 369.5 grams of cocaine, 6.5 ounces of crack, and 2 pounds of marijuana), tools of the drug trafficking trade, (i.e., small plastic bags, a heat sealer, beakers, a postal scale, and a digital scale), and a safe containing $21,000 in cash.

The Fourth Amendment provides that warrants must be "supported by Oath or affirmation" and describe with "particular[ity] . . . the place to be searched, and the persons or things to be seized." U.S. Const. amend IV. The Sixth Circuit has explained the law regarding search warrants:

> Under the Fourth Amendment, no search warrant shall issue without probable cause. *United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006). Our probable cause determination is confined to the information within the four corners of the affidavit supporting the search warrant request. *Id*. Probable cause exists where there is a "fair probability or "reasonable grounds for belief" that police will find evidence of a crime at the location of the proposed search. *Id*."

*Marcilis v. Township of Redford*, 693 F.3d 589, 600-601 (6th Cir. 12012).

As respondent indicates, the challenged affidavit contained precise details which justified issuance of the search warrant. More specifically, the affidavit identified the location of the search as 249 Wilmore Drive, with a map and photograph attached, and contained proof that petitioner and his wife jointly owned the home, gleaned from research into the tax records. The affidavit also described the residence and tethered it to petitioner, not solely by ownership, but also by his actions: Walden stopped by the residence and entered it, *see Walden*, 625 F.3d at 963 n.1, just prior to the traffic stop, and a neighbor reported weekly or biweekly visits to the home by an African-American. (Contrary to petitioner's suggestion, there was no need for the affidavit to attach the neighbor's *written* statement to support issuance of the search warrant.).

12

Furthermore, the controlled sale of narcotics to a CI (which was pretermitted by the traffic stop) and the other one to the CI, along with the results of the surveillance of petitioner, the recorded telephone calls involving arrangements for the drug sales, and his history of drug trafficking, provided reasonable grounds for a belief that drugs, cash, tools of the drug trade, or other items connected to drug trafficking (as delineated in the affidavit) would be uncovered at 249 Wilmore Drive on October 6, 2006. The affidavit also included particulars about the officer's knowledge and previous experience involving the drug trafficking trade. All the information was fresh. Clearly, the warrant was valid, as it described the location and things to be found therein with particularity and was supported by probable cause.

Alternatively, even if probable cause were lacking, the evidence gleaned from the search of the residence could still be admitted because the supporting affidavit contained strong indicia of probable cause, rendering it objectively reasonable for the officers who executed the search to believe that it was valid. When officers' reliance on an invalid warrant is objectively reasonable, the "good faith" exception to the exclusionary rule applies and allows evidence obtained from a flawed search warrant to be admitted against a defendant. *See United States v. Leon*, 468 U.S. 897, 104 S. Ct. 3405, 82 L.Ed.2d 677 (1984).

Because the Court has found that the search warrant was supported by probable cause, or alternatively, that *Leon*'s "good faith" exception applies, and because nothing in the record or in petitioner's pleadings undermines either conclusion, counsel did not give a prejudicial performance in failing to challenge the search warrant for lack of probable cause, particularity, or anything else.

*d. Compliance with Rule 41*

In his next claim, Walden maintains that he received ineffective assistance due to counsel's failure to pursue a suppression motion under Rule 41 of the Federal Rules of Criminal Procedure.

Rule 41(b) (1) states:

> At the request of a federal law enforcement officer or an attorney for the government: a magistrate judge with authority in the district—or if none is reasonably available, a judge of a state court of record in the district—has authority to issue a warrant to search for and seize a person or property located within the district.

Rule 41 is meant to insure that federal officers investigating federal crimes comply with the federal rules governing their conduct and do not use instead more lenient or more flexible state procedures. *United States v. Searp*, 586 F.2d 1117, 1121 (6th Cir. 1978). Where no federal agents participate in obtaining or executing a search warrant, Federal Rule of Criminal Procedure 41 does not apply. *United States v. Marales*, 10 Fed. Appx. 268, 269, 2001 WL 505947, *1 (6th Cir. Apr. 30, 2001) (citing *United States v. Bennett*, 170 F.3d 632, 635 (6th Cir.1999), and *United States v. Shields*, 978 F.2d 943, 946 (6th Cir.1992)).

Petitioner alleges first that the officer who obtained the search warrant was a task force agent who works in conjunction with both the TBI and the DEA and that his involvement shows that his case was "a federal proceeding from 'start to finish,'" (Doc. 82-1, Petr's Br. at 15). Petitioner also contends that the search warrant contained other Rule 41 deficiencies, such as that it was issued by a general sessions court judge, and not a state judge in a court of record. Walden further maintains that Rule 41 was applicable to the search warrant because the acceptance of a plea agreement by Tracy Brown, the CI, prior to issuance of the warrant, "triggered . . . federal powers and jurisdiction to handle the case," (*Id*. at 13). Thus, petitioner concludes that, had counsel filed a motion pointing out all the Rule 41 shortcomings in the search warrant, the Court

14

would have suppressed the evidence obtained in the search which, in turn, would have led to the dismissal of Counts three, four and five of the indictment.

Respondent counters that counsel did not render ineffective assistance in this instance because where, as here, the search at issue was a search by state officials—not a search by federal officials—Rule 41 is not implicated in this case.

Here, as the United States points out, the investigation was a state investigation, the initial controlled drug buy on August 31, 2006, was conducted by state law enforcement agents, the drugs involved in that transaction were sent to and analyzed by a state agency (the TBI), the *Terry*-stop of petitioner was conducted by a state law enforcement officer, the agent who applied for and submitted an affidavit to support the search warrant was a state agent, who listed himself three times in the affidavit as a TBI special agent, and the search of the Wilmore Drive residence was executed only by state law enforcement agents.

Despite all these salient points, Walden nonetheless argues that the fact that the officer who requested the warrant was both a TBI agent and a DEA task force agent shows that the case was a federal case. This argument is not persuasive. Even though the officer who applied for the search warrant was both a state and federal agent, he identified himself in his affidavit as a TBI special agent and specified that the laws which he had probable cause to belief were being violated were state controlled substance laws, i.e., Tennessee Code Annotated § 39-17-419, not federal laws. These things strongly suggest that, in applying for a search warrant, the agent was acting only in his state law enforcement role. There is no hint in the affidavit of any federal involvement in securing the search warrant.

The Sixth Circuit has observed that "[t]he mere fact that state law enforcement officers hold federal deputations does not transform their every act into a federal one." *United States v. Hooper*,

15

163 Fed.Appx. 397, 398, 2006 WL 265461, *1 (6th Cir. Feb. 1, 2006) (citing *United States v. Greer*, 762 F. 2d 1012 (6th Cir. Apr. 30, 1985) (unpublished table decision) (No. 84-5856 available at 1985 WL 13251)).  So long as the evidence shows that the officers were acting in furtherance of a state investigation at the time they requested and executed a search warrant, Rule 41 is not implicated.  *Id; cf. Searp*, 586 F.2d at 1121(finding that a search was a federal search, subject to Rule 41, where, from the onset, an investigation was a joint federal and state endeavor, an FBI agent provided an affidavit containing the facts to support issuance of the warrant, five FBI agents were present at the search, and a federal agent directed the search).  Also, because the search was not a federal search, it does not matter that a general sessions court judge issued the search warrant. *United States v. Winkler*, 2008 WL 5136463, *12 (E.D. Tenn. Dec. 4, 2008).

Walden cites to *United States v. Pabellon*, 181 F.3d 93, 1999 WL 305052 (4th Cir. May 14, 1999), which he calls "his foundation case," for his last theory as to why Rule 41 applies, i.e., because Tracy Brown, a witness against him, was a "documented federal informant," (Doc. 82-1, Petr's Br. at 13).   However, the cited case is inapposite to Walden's case due to the legal and factual distinctions between them.

In *Pabellon*, a defendant who was charged with an offense under the Victim and Witness Protection Act, 18 § 1512(a)(1)(A), argued that his motion for a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure should have been granted based on the lack of sufficient evidence showing that he murdered a proposed witness, specifically with the intent of preventing the witness's testimony in federal court. The Fourth Circuit rejected the claim, finding that the total proof, including that the victim was a "documented federal informant at the time of his death," showed that the proceeding at which victim was to testify was federal in nature.  *Pabellon*, unlike in Walden's case, involved no challenged search and no Rule 41 issue.  It does not help him.

16

As the above discussion makes clear, a Rule 41 motion to suppress would not have been granted because Rule 41 did not apply to the search warrant and the subsequent search. An attorney is not required to raise claims which lack a legal basis and are doomed to fail. *Krist v. Foltz,* 804 F.2d 944, 946-47 (6th Cir. l986). And, a lawyer cannot be ineffective when he does not raise such claims. *Greer v. Mitchell*, 264 F .3d 663, 67 6 (2001).

2. <u>Motion to Dismiss the Indictment (Pet., grounds 4-5).</u>

In his next claim, Walden asserts that counsel gave him ineffective assistance by failing to seek dismissal of the indictment pursuant to the Speedy Trial Act, 18 § 3161(b), and Rule 12(b) of the Federal Rules of Criminal Procedure, on the basis of defects in the indictment.

a) *Speedy Trial Act*

Petitioner first alleges that his statutory speedy trial rights were violated because Tracy Brown was a "documented federal informant" and because the beginning date of Walden's federal prosecution was the date on which he disclosed information regarding his involvement in narcotics trafficking, which Walden pegs as August 31, 2006, (Doc. 82-1, Petr's Br. at 16). Walden also points to the fact that no state charges arose out of the events of October 5-6, 2006, when petitioner and his Wilmore Drive property were searched and evidence was seized, and that the federal charges were not filed until June 12, 2007, (Doc. 1), nine months later. During five of those months, petitioner was confined in a local jail on a state parole violation, which he suggests also provides another basis for counting this five-month period of time towards the time limits set forth in the Speedy Trial Act. This is so, according to Walden, because his confinement resulted from "a working arrangement between local and federal authorities" designed to allow federal authorities to interrogate him in violation of Federal Rule of Criminal Procedure Rule

17

5(a), which requires prompt arraignment before a U.S. magistrate judge. Walden was free on release from his state confinement for four months prior to the filing of the federal charges.

The Speedy Trial Act, 18 U.S.C. § 3161 *et seq.,* provides, *inter alia*, that a defendant's trial must "commence within seventy days from the filing date . . . of the . . . indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1). However, "certain specified periods of delay are not counted." *Zedner v. United States*, 547 U.S. 489, 492 (2006).

Walden once again points to *Pabellon*, as authority for his argument that his federal proceedings began with the CI's disclosure regarding petitioner's involvement in drug selling. But the Court has already found that the facts in the cited case are inapposite to petitioner's case. That case involved a murder of a federal witness and not an issue regarding a violation of the Speedy Trial Act. And, like this instant citation, petitioner's other arguments in his statutory speedy trial claim are unavailing.

Petitioner must offer facts, not mere suspicion or speculation, *United States v. Hindmarsh*, 389 F.2d 137, 146 (6th Cir. 1968), showing an illegitimate "working arrangement," such that "the state officials unlawfully detained him in order to allow the federal investigator to secure a confession." *United States v. Woods*, 613 F.2d 629, 633 (6th Cir. 1980) (citations omitted). The only support for Walden's bald, factually-undeveloped "working arrangement" contention is conjectural, which is insufficient to sustain his claim. Moreover, petitioner has not alleged that he confessed as a result of an interrogation while in custody of local authorities. Additionally, whether the searches and seizures which occurred on October 5-6, 2006, did or did not result in an arrest on state charges is irrelevant to an alleged violation of the Speedy Trial Act. *See United States v. Legette–Bey*, 147 F. Appx. 474, 487 (6th Cir. 2005) (no violation of the

18

Speedy Trial Act when defendant was arrested on state charges, which "were later dropped in favor of a federal indictment"); *United States v. Copley*, 774 F.2d 728, 730 (6th Cir. 1985) ("[O]nly federal arrest, as distinct from state arrest, triggers the protections of the Speedy Trial Act".); *United States v. O'Dell*, 154 F.3d 358, 360 (6th Cir. 1998) ("The plain meaning of the language of the S[peedy]T[rial]A[ct] requires a not guilty plea [to a federal offense] to begin the clock running.").

Finally, given petitioner's acknowledgement that his state incarceration terminated four months prior to the initiation of the federal prosecution, the state authorities' decision to release him without any federal prosecution pending against him shows that they could not have been holding him solely to answer to federal charges, so as to implicate the time limitations in the Speedy Trial Act. *See Copley*, 774 F.2d at 730 (Speedy Trial Act's time periods may be activated by temporary restraint of prisoner in state custody solely to allow federal officials to decide whether to file federal charges against him.) Indeed, the state authorities were not holding him at all, much less for a filing of a federal indictment.

For the above reasons, the Court finds that counsel did not give ineffective assistance by failing to pursue a claim involving a violation of the Speedy Trial Act.

b) *Rule 12(b), Federal Rules of Criminal Procedure*

Petitioner maintains that counsel should have moved to dismiss his indictment, under Federal Rule of Criminal Procedure 12(b), due to the indictment's deficiencies. (Rule 12(b)(3) requires motions alleging defects in an indictment, generally, to be made pretrial.) Walden identifies, as deficiencies, the lack of a notary seal of the clerk of court on the front page of the indictment, the lack of the signature of the foreperson on the electronically filed indictment, and the differences between the date an agent testified before the Grand Jury, which the court

19

reporter (by implication) indicated that she witnessed, and the date the court reporter notarized the transcript of those proceedings. None of these arguments have any substance.

A federal indictment need not contain the Court of Clerk's notary seal. Both pages of the instant indictment bear an electronic filing certificate, which is all that is required. By the same token, an indictment filed on the Court's electronic case filing system need not contain the actual signature of the foreperson, as the electronic signature suffices and has sufficed in this Court for some years. Finally, as the United States points out in its response, Walden has apparently confused the date of the Grand Jury testimony with the date on which the transcript was prepared and certified as accurate by the court reporter. The testimony was given on June 12, 2007; the transcript of that testimony was prepared and certified as true and accurate on November 8, 2007. Put another way, what was being certified by the court reporter was not that, on November 8, 2007, she *observed* the witness testify to the Grand Jury, but instead that, on that date, her *transcription* of the witness's testimony was true and accurate. This is a misunderstanding about the indictment on petitioner's part, and not a defect in the indictment.

Since the indictment was not defective for the reasons Walden has advanced, counsel did not render a prejudicial performance in failing to move to dismiss the instrument on those bases.

3. Motions for a Judgment of Acquittal (Pet., grounds 6-9)

a. *Count Two (Traffic Stop, Fruit of the Poisonous Tree & Lesser Quantity)*

i. *The Traffic Stop*

In his first claim in this category of claims, Walden maintains that counsel should have moved for a judgment of acquittal under Rule 29, Federal Rules of Criminal Procedure, based on the lack of evidence to support the *Terry*-stop. Though the officer justified the stop on the basis

that he believed that the tint was too far down on the window of the vehicle petitioner was driving, in violation of the state's window tint law, Walden was not cited for the offense. Further, the officer testified that, prior to the encounter, a detective instructed him to try to find a reason to stop the vehicle.

As support for his claim, Walden relies on *United States v. Page*, 154 Fed. Supp. 2d 1316 (M.D. Tenn. 2001), which he mistakenly cites as *United States v. Oscar Marvin.* (Oscar Marvin is defendant Page's first and middle names.) In *Page*, the court refused to credit the testimony of the arresting officer, who averred that, during a 5- to 10-second observation, he could tell that a truck being driven around a sharp curve at a speed of 30 mph had a window with tint that was too dark. The officer had also seen the truck earlier, but had not mentioned in his testimony anything about the window tint at that time. The Court infers, from this citation and accompanying allegations, that petitioner is alleging that the officer's testimony concerning the suspected violation of the state window-tint law was untrue and a pretext to engage in the traffic stop, whereas the true reason petitioner was stopped was to search him and his vehicle for illicit drugs.

The Court finds that this claim, as inferred, is merely a refashioning of a claim made earlier, to wit that there was no probable cause to support the October 5, 2006, traffic stop. The probable-cause claim thoroughly was addressed and rejected previously in this opinion. Because the Court has determined that the stop was sustained by probable cause, a Rule 29 motion for judgment of acquittal on Count two would not have succeeded, given that the record was not "devoid of evidence pointing to guilt" on Count two, so as to constitute a "miscarriage of justice." *United States v. Abdullah*, 162 F.3d 897, 903 (6th Cir. 1998) (enunciating the standard of proof which governs when a Rule 29 motion not made at trial is raised on appeal) (quoting

*United States v. Price*, 134 F.3d 340, 350 ( 6th Cir. 1998)). Trial counsel did not provide ineffective assistance by failing to pursue such a futile motion, since counsel has no duty to assert a legally baseless claim, *United States v. Martin*, 45 Fed. Appx. 378, 381 (6th Cir. 2002); *Krist*, 804 F.2d at 946-47, and since he cannot be ineffective when he does not raise that type of claim. *Greer v. Mitchell*, 264 F.3d 663, 676 (2001). Counsel committed no error in this respect.

### ii. Fruit of the Poisonous Tree

In the second claim in this subset of claims, Walden maintains that counsel gave him ineffective assistance by failing to move for a judgment of acquittal on Counts three, four, and five based on a "fruit of the poisonous tree" argument. The "fruit of the poisonous tree" doctrine holds that evidence is inadmissible in a criminal prosecution if it is "obtained as a direct result of an unconstitutional search or seizure," or if it is "later discovered and found to be derivative of any illegality or fruit of the poisonous tree." *Segura v. United States*, 468 U.S. 796, 804 (1984) (internal quotation marks and citations omitted); *see also Wong Sun v. United States*, 371 U.S. 471, 485 (1963) (evidence, either direct or indirect, which is gleaned from an unlawful search must be excluded).

Walden's poisonous-tree argument rests initially on the premise that the *Terry*-stop was not supported by probable cause and, thus was illegal. Building upon this wholly baseless premise, petitioner next argues that, because the stop was unlawful, the search warrant, which relied in part on evidence uncovered during the *Terry*-stop, was likewise unlawful and that evidence derived from the unlawful search of the Wilmore Drive property was impermissible poisonous-tree evidence. Because petitioner's entire argument rests upon a false premise (i.e., that there was not probable cause for the traffic stop), his reasoning is unsound and his conclusion that the "illegal pat and frisk as to count 2 spilled over on counts 3, 4 and 5" is

22

irredeemably flawed, (Doc. 82-2, Petr's Br. at 24).   Counsel need not raise baseless issues to avoid a later claim of ineffective assistance.

### iii. Lesser Quantity

The final claim in this grouping of claims is stated thus:  "Attorney Laughlin should have moved for a motion of acquittal because the 'lesser quantity' would be the [direct cause] (sic) why Officer Ball stated that he told Petitioner to get out of his truck, which would have given Officer Ball probable cause to pat Petitioner down," (Doc. 82-1, Petr's Br. at 24).   This allegation, as phrased, is incomprehensible, but viewing Walden's entire explication of the claim, the Court can liberally construe the contentions as asserting that counsel failed to file an acquittal motion based on the lack of an instruction on a lesser included offense with respect to Count two.

This claim, as construed, is contradicted by the record.  The trial transcript shows that, in fact, the Court gave instructions on a lesser included offense, which petitioner now asserts it did not give, (Doc. 64, Trial Tr., vol. II at 49-50).  Thus, any Rule 29 motion based on a failure to give lesser-included-offense instructions, which actually were given, would have been legally frivolous.   Counsel has no duty to file legally frivolous motions and cannot give ineffective assistance when he fails to do so.  *Martin*, 45 Fed. Appx. at 381; *Krist*, 804 F.2d at 946-47.

### b. Counts Three – Five (Rule 41 violation & Insufficient Evidence of Drug Quantity)

Walden first alleges, in this two-claim category, that counsel failed to make a Rule 29 motion for judgment of acquittal with regard to Counts three, four and five, based on lack of compliance with Federal Rule of Criminal Procedure 41 on the part of the officer who sought and obtained a search warrant for the Wilmore Drive residence.

Those counts charged that petitioner possessed with the intent to distribute, seriatim,

cocaine base, cocaine, and marijuana, each of which requires proof of three elements: that "the defendant (1) knowingly, (2) possessed a controlled substance, (3) with the intent to distribute it." *United States v. Coffee*, 434 F.3d 887, 897 (6th Cir. 2006).

The instant illustrations of attorney missteps, based on counsel's failure to raise Rule 41 violations in a Rule 29 motion, were offered earlier as examples of counsel's shortcomings in failing to file a motion to suppress, (*see, infra,* Section III.B.1.d). The Court painstakingly discussed each alleged instance of noncompliance with Rule 41 and, ultimately, found that the search warrant was a state search warrant, that the investigation preceding its issuance was a state investigation, that there was no federal involvement with the issuance or execution of the search warrant, and that Rule 41 did not apply to the warrant. Those findings are incorporated in connection with the instant claim.

Therefore, because Rule 41 does not apply to the search warrant, a motion for a judgment of acquittal would have lacked merit and would have been denied by this Court. Thus, Walden did not receive ineffective assistance as a result of his trial attorney's failure to seek a judgment of acquittal based on purported violations of Rule 41 in securing the search warrant.

The second claim in this category is that counsel failed to move for a judgment of acquittal on Counts three through five, on the basis that the evidence was lacking to prove that his client possessed fifty grams or more of cocaine base, cocaine, and marijuana—all of which were discovered during the search of his residence. According to Walden, where, as here, evidence is admitted against an accused based only on the fact that he is the owner of vacant property where illegal drugs are found, a reasonable trier of fact could not conclude that the accused possessed the drugs stored in a vehicle parked in the basement garage of property which he owned, but did not live in. Petitioner argues, *inter alia*, that the vehicle was not traced or

24

linked to him, that he was never seen driving the vehicle, that the vehicle was not seen at any location where the drug transactions occurred, and, moreover, that there was no proof that he had ever been inside the residence, let alone the basement.

Walden points to what he sees as the most telling, favorable evidence—that he explained to the CI that he could not supply her with a requested three ounces of crack cocaine, even though 6.5 ounces of crack cocaine were discovered in the vehicle. Had he knowingly possessed the crack found in the vehicle and had he stopped by the Wilmore Drive residence, where the crack cocaine was located, he asks rhetorically, would he not have retrieved that amount the CI asked to be supplied and would he not then have had it in his possession when he was stopped and searched by the officer? (Counsel posed this same question to the jury during his closing argument, (Doc. 64, Trial Tr. at 31-32)), and the jury, impliedly, answered negatively, as disclosed in its verdict of guilty.).

Rhetoric aside, drug possession may be actual or constructive. *United States v. Paige*, 470 F.3d 603, 609 (6th Cir. 2006); *United States v. Craven*, 478 F.2d 1329, 1333 (6th Cir. 1970). A defendant has actual possession of a drug when it is in his immediate possession or control. *Craven*, 478 F.2d at 1333. Here, there was no actual possession by petitioner of the narcotics found in the car since he was not present during the search of the Wilmore Drive residence, and since the drugs were not in his immediate possession or control. A defendant has constructive possession of a drug when he "knowingly has the power and the intention at a given time to exercise dominion and control over [the drug]." *Ibid*. This is the type of possession which the evidence encompassed.[2]

---

[2]   The Court instructed on both actual and constructive possession of controlled substances, since drugs were found on petitioner's person during the *Terry*-stop (actual possession) and in the vehicle in the basement of the Wilmore Drive house during the execution of the search warrant (constructive possession), (Doc. 64, Trial Tr. at 48).

The jury heard evidence that, according to tax records, Walden owned the Wilmore Drive house jointly with his wife; that, following a recorded phone call during which the CI arranged with petitioner to buy crack cocaine from him, he drove to the house, backed his truck into the driveway, and dropped off a flat-bed trailer he was pulling behind the truck; that one of the officers maintaining surveillance on petitioner drove past the house, but did not stop in order to avoid being detected by the target, and saw the truck, but did not see petitioner; that Walden left the house and shortly thereafter was pulled over by the police officer who conducted the *Terry*-stop; and that the officer's subsequent search of petitioner netted 69.9 grams of cocaine base.

The circumstances in the record which are limned above constitute evidence that petitioner constructively possessed the narcotics found in the vehicle in the basement garage of the Wilmore Drive residence. Petitioner owned the home. Just before the pre-arranged drug sale to the CI was set to occur, Walden drove to the residence, backed his truck into the driveway, and left the flat-bed trailer he was driving at the residence. After a short time, Walden pulled out of the driveway in his truck and, thereafter was stopped by the officer for a suspected violation of the state window-tint law. A search of petitioner uncovered 69.9 grams of cocaine base kept in his pocket.

"To establish constructive possession, the evidence must indicate ownership, dominion, or control over the contraband itself or the premises or vehicle in which the contraband is concealed." *United States v. Russell*, 595 F.3d 633, 645 (6th Cir. 2010) (internal quotation marks and citation omitted); *United States v. Kincaide*, 145 F.3d 771, 782 (6th Cir. 1998) ("Proof that the person has dominion over the premises where the [contraband] is located is sufficient to establish constructive possession.") (internal quotation marks omitted); *Craven*, 478 F.2d at 1333 ("Constructive possession exists when a person . . . knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or

26

through others."). And, a showing of constructive possession will support a conviction for possessing a controlled substance with intent to distribute. *United States v. Hill*, 142 F.3d 305, 312 (6th Cir. 1998). This evidence demonstrates that Walden had dominion over the property and the drugs located therein and thus suffices to show constructive possession of the narcotics.

Since this evidence clearly establishes that the record is "not devoid of evidence pointing to guilt," so as to constitute a "miscarriage of justice," *Abdullah*, 162 F.3d at 903, any motion for acquittal would have been a non-starter. Consequently, trial counsel did not provide ineffective assistance by failing to pursue such a futile motion. *Martin*, 45 Fed. Appx. at 381; *Krist*, 804 F.2d at 946-47.

4. Failure to Raise Issues on Appeal (Pet., ground 10)

The last claim asserted in the petition involves appellate counsel's alleged failure to raise the previous claims, with particular focus on four issues: 1) Tracy Brown's status as a "documented federal informer," which somehow caused the search warrant to be in violation of Federal Rules of Criminal Procedure 41, 2) Speedy Trial Act violations; 3) insufficient evidence to sustain Walden's conviction on Count two; and 4) flaws in the indictment issues, which violated Federal Rules of Criminal Procedure.

The Supreme Court has ruled that counsel has no duty to raise every nonfrivolous issue that a criminal defendant requests. *See Jones v. Barnes*, 463 U.S. 745, 754 (1983); *see also Smith v. Murray*, 477 U.S. 527, 536 (1986) (observing that the "process of 'winnowing out weaker arguments on appeal and focusing on those most likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy") (quoting *Jones*, 463 U.S. at 751-52); *Engle v. Isaac*, 456 U.S. 107, 134 (1982) (observing that "the Constitution guarantees criminal defendants a fair trial and a competent attorney [but] does not insure that

27

defense counsel will recognize and raise every conceivable constitutional claim").

Given the Court's rejection of all claims raised thus far as lacking in merit, and assuming, without finding, that counsel's performance was deficient with respect to any of those claims, Walden has sustained no resulting prejudice, as no relief would have been granted in his appeal in connection with groundless claims. *See United States v. Lawson*, 947 F.2d 849, 853 (7th Cir. 1991) (failure to make arguments that "are clearly destined to be unsuccessful" does not amount to ineffective assistance of counsel).

4. <u>Jury-Right Violations (Supplement, grounds 1-2)</u>

In the first of the claims offered in the supplemental § 2255 motion, Walden argues that the jury did not find whether the cocaine base, the controlled substance which underlay the charge in Count 3, was "crack" or powder cocaine. It was a significant omission for the jury not to make a crack-or-powder-cocaine determination, according to petitioner, because that conviction led to the imposition of a life sentence.

As the United States points out in its response, the Supreme Court has decided, in a case involving the same statute of conviction as petitioner's, that the term "'cocaine base' reaches more broadly than just crack cocaine" and refers to "cocaine in its chemically basic form," not "exclusively to what is colloquially known as 'crack cocaine.'" *DePierre v. United States*, 131 S.Ct. 2225, 2231 -2232 (2011). The Court agrees with respondent that because Walden was charged and convicted by the jury of possession and distributing cocaine base, no additional jury finding as to whether the controlled substance was "cocaine base" or "crack cocaine" was required. Under the applicable statutory dictates, Walden was properly convicted and correctly sentenced to a life term of incarceration.

Walden's second claim in this subset of claims is that there was no jury conclusion as to

whether he, in fact, had the prior convictions alleged in the government's § 851 information to establish prior convictions, (Doc. 5). This claim is fatally undercut by the holding in *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), in which the Supreme Court stated that prior convictions did not need to be presented to the jury or proven beyond a reasonable doubt to comply with the Constitution.

Petitioner recognizes implicitly that *Almendarez-Torres* is the law, but asserts that that it is bad law and may soon be overruled, (Doc. 88, Petr's Supp. § 2255 motion at 9-10). Though Justice Thomas has suggested that the case was wrongly decided and should be revisited in an appropriate case, *Shepard v. United States*, 544 U.S. 13, 28-29, 125 S.Ct. 1254, 1264 (2005) (Thomas, J., concurring in part and concurring in the judgment), the Supreme Court has not overruled its decision, which remains good law. *See United States v. Nagy*, __ F.3d __,__, 2014 WL 3632362 (6th Cir. July 24, 2014) (noting that, in several cases, the Sixth Circuit has "made clear that *Almendarez-Torres* has not been overruled"). "A decision of the Supreme Court will control that corner of the law unless and until the Supreme Court itself overrules or modifies it. Judges of the inferior courts may voice their criticisms, but follow it they must." *See e.g., Hart v. Massanari*, 266 F.3d 1155, 1171 (9th Cir. 2001).

5. Mitigating Factors in 18 U.S.C. § 3553(a) (Supplement, ground 3)

Walden's final claim in the supplement to the § 2255 motion is that mitigating factors existed in his case which called for a lesser sentence than life imprisonment—a sentence which, in his opinion, was greater than necessary to achieve the goals of sentencing as set forth in 18 U.S.C. § 3553(a). The only mitigating factors which the Court can discern he is identifying appear to be his race (he is African-American) and his age (stated in his supplement to be 44 years). Walden argues that courts, the Sentencing Commission, and commentators alike recognize that African-

Americans are disproportionately disadvantaged by receiving harsher sentences under Draconian crack sentencing laws and that the likelihood of recidivism of a convict decreases with age, lessening the need to protect the public from further crimes of a defendant, as stated in 18 U.S.C. § 3553(a)(2)(C). Petitioner further suggests that the rule of lenity calls for a lesser punishment as well.

Respondent counters that because petitioner received a statutorily-mandated minimum sentence of life on Count three, he cannot show that his sentence was greater than necessary. Respondent relies on *United States v. Senter*, 424 Fed. Appx. 443, 2011 WL 1977308 (6th Cir. May 20, 2011), where the Sixth Circuit stated: "On several occasions, criminal defendants have asked us to conclude that § 3553(a) trumps mandatory minimum sentences, and each time we have answered the same way: no" and "[b]ecause § 841(b)(1)(A) unambiguously requires a life sentence for [defendant], one that is not subject to modification under § 3553(a), there is no work for the lenity canon to do." *Id.*, 424 Fed. Appx. at 446-447, 2011 WL 1977308 at *3-4.

Petitioner, as he acknowledges, received for his Count three conviction a mandatory minimum sentence required by 28 U.S.C. § 841(b)(1), based on his two prior felony drug convictions, (Doc. 60). Walden's sentencing memorandum contained the same or substantially similar arguments for a lesser sentence than life as are now offered in the supplemental § 2255 motion, (Compare Doc. 58 with Doc. 88). The Court rejected them then and sees no reason to revisit them now, as nothing presented in the supplement causes the Court to change its mind.

## IV.  Conclusion

Because all claims raised in this § 2255 motion are meritless, the Court will **DENY** the motion.

30

# V.  Certificate of Appealability

The Court must now consider whether to issue a certificate of appealability (COA) should petitioner file a notice of appeal.  Under 28 U.S.C. § 2253(a) and (c), a petitioner may appeal a final order in a § 2255 case only if he is issued a COA, and a COA will be issued only where the applicant has made a substantial showing of the denial of a constitutional right.  *See* 28 U.S.C. § 2253(c)(2). A petitioner, whose claims have been rejected on the merits, satisfies the requirements of § 2253(c) by showing that jurists of reason would find the assessment of the claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has individually assessed petitioner's claims under the relevant standards and finds that those claims do not deserve to proceed further because they have no viability in light of the governing law.  Thus, jurists of reason would not conclude the disposition of those claims was debatable or wrong.  Because petitioner has failed to make a substantial showing of the denial of a constitutional right, a COA will not issue.

A separate order will follow.


**ENTER:**

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE